### MILLER et al. v. LEMM et al.
### (No. 441–3922.)

(Commission of Appeals of Texas, Section B. Oct. 14, 1925.)

**1. Mortgages ⬥151(4)—Attachment lien superior to subsequent mortgage.**

Attachment lien title to lot is superior to mortgage lien thereon afterward taken.

**2. Deeds ⬥42—Vendor and purchaser ⬥230(1)—False description to be corrected; filing of deed for record notice to subsequent purchasers of matters embraced therein by fair construction.**

Where there is evidence of mistake in calls, court, if practicable, must find out from deed itself and correct errors so as to give effect to deed, and filing thereof for record gives notice to subsequent purchasers of what is embraced in its terms by fair construction.

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. Boundaries ⬅8—Lot described in attachment lien record held to begin on west instead of east line of tract as stated in call.**

Lot, described in attachment lien record as within certain tract, *held* on west instead of east side of such tract, as matter of law, though one call described it as beginning at point on east line of tract.

**4. Mortgages ⬅186(6)—Finding lot described in attachment lien record was same as that described in subsequent mortgage held warranted.**

Where attachment lien record, properly construed, indicated that lot described as beginning on east line of certain tract was off west side thereof, and jury found that such tract was bounded by streets, one of which was referred to in subsequent mortgage, court could find that attached lot was same as that described in mortgage.

**5. Appeal and error ⬅218(2)—Appellant, not asking submission to jury of issue, as to which he had burden, cannot complain of adverse finding by court.**

In suit to foreclose mortgage lien, burden was on plaintiff to show that mortgaged lot was not same as that described in record of prior attachment lien, and, by not asking submission of such issue to jury, he agreed to leave it to court, and could not complain of adverse finding by latter.

**6. Appeal and error ⬅930(3) — Unsubmitted facts presumed found in way to support judgment and findings sustained, if supported by evidence.**

It will be presumed that court found unsubmitted facts in such a way as to support his judgment, and such findings will be sustained, under Rev. St. art. 1985, if supported by evidence.

**7. Mortgages ⬅153—Whether mortgagee inquired as to identity of mortgaged lot with lot subject to prior attachment lien immaterial on issue as to party entitled thereto.**

Whether mortgagee made inquiry as to identity of mortgaged lot with lot on which another claimed prior attachment lien is immaterial, in suit to foreclose mortgage lien against adverse claimants; party having better claim being entitled to lot in any event.

**8. Judgment ⬅194—Immaterial issue may be disregarded in rendering judgment.**

Immaterial issue can be disregarded by trial court in rendering judgment.

**9. Husband and wife ⬅262(1)—Presumption that property conveyed to wife by another than husband by deed reciting cash consideration is community property.**

Presumption is that property, conveyed to wife by another than her husband, by deed reciting cash consideration, placing no restrictions thereon, and containing no recitation as to separate character of property, is community property.

**10. Husband and wife ⬅262(1)—Showing that deed to wife by another than husband was in fraud of latter's creditors held unnecessary.**

Property conveyed to wife by another than her husband by deed of date subsequent to that of husband's deed to wife's grantor *held* presumptively community and subject to husband's debt, so that it was not necessary for creditor to show that deed to wife was in fraud of creditors.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Suit by Eli Lemm against Bettie W. Miller, Charles B. Genusa, D. F. Kramer, and wife and another. Judgment for defendant Miller against defendants Kramer reversed and cause remanded, judgment for defendant Genusa against plaintiff reversed, and judgment rendered for plaintiff by Court of Civil Appeals (245 S. W. 90), and defendants Miller and Genusa bring error. Reversed, and judgment of district court affirmed.

A. R. & W. P. Hamblen, W. P. Neblett, and Huggins & Kayser, all of Houston, for plaintiffs in error.

Jones & Jones, of Houston, for defendants in error.

POWELL, P. J. For a statement of the case, we adopt the following from the opinion of the Court of Civil Appeals:

"The facts of this case are as follows:

"(1) On October 1, 1914, D. F. Kramer and his wife owned and held as community property the land in controversy in this suit. On said date defendant J. B. Farthing Lumber Company instituted suit in one of the district courts of Harris county against D. F. Kramer on a debt in the sum of $1,334.07, and on the same day sued out a writ of attachment, and caused it to be levied by the sheriff of Harris county on the following described property of the defendant D. F. Kramer (omitting tracts 1, 2, and 3):

" 'Those certain lots lying and being situated in the John Austin two league grant in Harris county, Texas, north of White Oak bayou, each being a part of the former Grota homestead, and part of the German townsite survey, each also being a part of a certain two league tract of land conveyed by F. L. Perry and Louise Perry to I. R. McCasland. * * *

" 'Tract No. 4 being that certain lot, tract or parcel of land lying and being situated in Harris county, Texas, and being out of and a part of the two acre tract hereinabove mentioned, conveyed by F. L. Perry and Louise Perry to I. R. McCasland, described by metes and bounds as follows:

" 'Beginning at a point on the east line of said two acre tract 50 feet south of the northwest corner of said two acre tract;

" 'Thence south along the east line of said two acre tract 50 feet for corner in said east line;

" 'Thence east parallel with the north line of said two acre tract 100 feet for corner;

" 'Thence north parallel with the east line of said two acre tract 50 feet for corner;

" 'Thence west parallel with the north line

---

of said two acre tract 100 feet to the place of beginning.'

"The sheriff's return on this writ of attachment, showing the levy as made, was duly recorded by the county clerk of Harris county in the attachment lien records.

"(2) On the 10th day of March, A. D. 1915, appellant Eli Lemm loaned to D. F. Kramer $1,200 in money, for which he took his note, which was secured by a deed of trust executed by D. F. Kramer on the following described tract of land:

"'Lot 9 in block 4 in Germantown addition to the city of Houston, out of the John Austin survey in Harris county, Texas, said lot having a frontage of 50 feet on Houston avenue and a depth of 100 feet running back at right angles with said avenue, the S. W. corner of said lot 9 being on the east line of said Houston avenue, at 100 feet from the S. W. corner of the I. R. McCasland homestead tract and the N. E. corner of said lot 9, being on the east line of said Houston ave. at 150 feet from the S. W. corner of said I. R. McCasland homestead tract.'

"The appellees in this case contend that the tract No. 4, as described in the sheriff's return, is the same land described in Lemm's deed of trust.

"(3) On the 23d day of November, 1915, J. B. Farthing Lumber Company secured a judgment against D. F. Kramer for the amount of its debt, with a foreclosure of the attachment lien, under which judgment the property was duly sold and bought in by J. B. Farthing Lumber Company on the first Tuesday in February, 1916, and on the 25th day of February, 1916, J. B. Farthing Lumber Company instituted a suit in trespass to try title against D. F. Kramer, in which judgment was rendered on the 24th day of April, 1917, in its favor against Kramer for the title and possession of the property sued for, which included lot No. 4, as described in the sheriff's return.

"(4) On the unpaid balance of its judgment against Kramer J. B. Farthing Lumber Company sued out a pluries execution on the 26th day of September, 1917, and had it levied on the following described tract of land:

"'That certain tract or parcel of land out of the part of the two acres of land conveyed by Louise Perry and husband E. F. Perry to I. R. McCasland by deed dated July 11, 1894, and recorded in volume 79, page 183, of the Deed Records of Harris county, Texas, being also a part of the Old Grota homestead in the Germantown S. D. of the John Austin two league grant in Harris county, Texas, and being more fully described as follows:

"'Beginning at a point in the south line of the McCasland two acre tract at a point 78 feet east of the east line of Houston ave.

"'Thence north parallel with the east line of Houston ave. 100 feet;

"'Thence east parallel with the south line of said two acre tract 22 feet;

"'Thence north parallel with the east line of Houston ave. 5 feet;

"'Thence east parallel with the south line of said two acre tract 55 feet;

"'Thence south parallel with the east line of Houston ave. 105 feet to the south line of said two acre tract;

"'Thence west along the south line of said two acre tract to the place of beginning, in the city of Houston, Harris county, Texas.'

"And under a sale under such execution bought the lot, taking the sheriff's deed thereto on the 6th day of November, 1917.

"(5) On the 28th day of December, 1917, by its general warranty deed, J. B. Farthing Lumber Company conveyed lot No. 4, as described in the sheriff's return, and the lot bought by it on the 6th day of November, 1917, of Mrs. Betty W. Miller, who, on the 14th day of January, 1918, by her general warranty deed, conveyed lot No. 4 to defendant Genusa. Lot No. 4 in the sheriff's return and the lot described in Lemm's deed of trust—it being the contention of appellees that these two descriptions cover the same property—and the lot bought by Farthing Lumber Company on the 6th day of November, 1917, constitute all the property in controversy in this suit.

"(6) On the 7th day of March, 1917, D. F. Kramer conveyed all the property in controversy, together with other property situated on the McCasland two acre tract, to Earl York, who, on the same day, reconveyed it to appellant Mrs. Elizabeth Kramer, wife of D. F. Kramer.

"(7) On the trial of this cause the evidence showed that the McCasland two acre tract referred to in the sheriff's return was not conveyed to him by F. L. Perry and wife, but by E. F. Perry and wife. By parol evidence, the Grota homestead was located. Partition was shown between a Mr. Grota and Mrs. Perry, and the two acre McCasland tract was located on the ground as being bounded on the east by Houston avenue, on the north by North street, on the west by the Depenbrock property, and on the south by Payne street. It was further shown that the original northwest corner of the McCasland two acre tract is 25 feet in Houston avenue; that is, a strip 25 feet wide off the west end of this tract was dedicated by McCasland for street purposes, and is now a part of Houston avenue. It was contended by appellees that the parties, by agreement, had established a new northwest corner for this tract, and that the new corner was the one referred to in the sheriff's return.

"(8) The proof shows that after the execution and transfer of said property by Kramer to York, who transferred to Mrs. Kramer, he owned other property in Texas subject to execution, but the value of such property was not shown.

"On the foregoing facts, Eli Lemm, as plaintiff, instituted this suit in one of the district courts of Harris county against the defendants D. F. Kramer, Elise Kramer (otherwise Elizabeth Kramer), Chas. B. Genusa, Betty W. Miller, and J. B. Farthing Lumber Company, alleging the due execution of his note and deed of trust by D. F. Kramer, as above stated, and that the other defendants were asserting some sort of claim against the property covered by the deed of trust, the exact nature of which was unknown to him, and praying for his debt against D. F. Kramer and for a foreclosure of his lien against all the defendants.

"Mr. and Mrs. Kramer did not contest the claim of Lemm, but claimed the land in controversy as the separate property of Mrs. Kramer, under the deeds from D. F. Kramer to York, and his deed to Mrs. Kramer. They alleged that the sale under the foreclosure of the attachment lien was void for certain reasons stated, not necessary to mention, and prayed that they have recovery against Genusa and Mrs. Miller,

but this issue was not raised by them until more than four years after the sale of the land by the sheriff under the foreclosure of the attachment lien, and no facts were pleaded excusing the delay in seeking that relief.

"Genusa pleaded the facts of the suit by J. B. Farthing Lumber Company against Kramer, the levy of the attachment, the sale under the foreclosure of the attachment lien, the trespass to try title suit by Farthing Lumber Company against Kramer, the sale by the Lumber Company to Mrs. Miller and her sale to him, and on these facts prayed for the recovery of the tract levied on by the sheriff as tract No. 4, alleging that it was the same property covered by Lemm's deed of trust.

"Mrs. Miller pleaded the same facts as to the suit for debt by Farthing Lumber Company against Kramer, the recovery of the judgment, the issuance of the pluries execution, the levy and sale thereunder to the lumber company, and the sale by it to her of the tract sold under the pluries execution. She further alleged that the sale by Kramer to his wife, through York, was void as to his creditors, in that it was an attempt to transfer to his wife all the property he owned in this state subject to execution.

"These defendants also pleaded the four year statute of limitation against Mrs. Kramer's suit to cancel the sheriff's deed under the foreclosure of the attachment lien.

"On a trial to a jury as between the Kramers and the other defendants, judgment was instructed against Mrs. Kramer and in favor of Genusa for all the land claimed by him, except a strip 5 feet by 100 feet, giving Genusa a lot 45 feet by 100 feet; and also in favor of Mrs. Miller for the property sold under the pluries execution.

"The issues between Lemm and Genusa were submitted to the jury under the two following questions, which were answered as indicated, to wit:

" 'State whether or not the two-acre homestead tract of I. R. McCasland, mentioned in the attachment and the sheriff's return of the levy of the attachment in suit No. 64734, entitled Farthing Lumber Company v. D. F. Kramer, is the same property shown by the evidence introduced herein to be the property now surrounded by and embraced in Houston avenue on the west, North street on the north, and Payne street on the south, and Depenbrock property on the east,' which issue the jury answered: 'It is the same.'

" 'Was or was not the recording of the attachment issued out of cause No. 64734 in the Eleventh district court, entitled J. B. Farthing Lumber Company v. D. F. Kramer and the recording of the sheriff's return on said attachment sufficient to put a person of ordinary prudence upon inquiry at the time Lemm took his mortgage as to whether or not the property described in said attachment return or any part thereof was the property upon which the mortgage of Lemm was fixed, as shown by his deed of trust introduced in evidence in this cause?' which issue the jury answered: 'It was not.'

"On return of this verdict, Lemm filed motion for judgment, which was denied. Defendant Genusa also filed motion for judgment, which was granted, giving him judgment quieting his title against any and all claims asserted by Lemm. Genusa did not object to the submission of these issues, filed no motion to have the answers thereto set aside, and has no cross-assignments in this court attacking the jury's answers thereto, nor the submission of the issues. Appellant Lemm has many assignments of error against the rulings of the court in the trial of the case, and also against the action of the court in entering judgment non obstante veredicto. Mrs. Kramer has assigned error against the action of the court in instructing a verdict against her."

Upon considering the appeal, the Court of Civil Appeals entered the following order:

"It is therefore ordered by this court that the judgment of the trial court as between defendants Kramer and wife and Genusa be affirmed; as between Kramer and wife and Mrs. Miller, that the judgment be reversed and the cause remanded; as between appellant Eli Lemm and appellee Genusa, that the judgment of the trial court be reversed, and judgment here rendered in favor of Eli Lemm, foreclosing his lien against all the parties. As the judgment in favor of Eli Lemm against D. F. Kramer was not appealed from, our order in no way affects it.

"Affirmed in part, reversed and remanded in part, and reversed and rendered in part."

See 245 S. W. 90.

[1] The application in this case was filed by Charles B. Genusa and Betty W. Miller only. We will first consider the contentions raised by Genusa. He claims title, under the attachment lien, to tract No. 4 above described. On the other hand, Eli Lemm claims a foreclosure of his mortgage lien on lot No. 9 in block 4. It is the contention of Genusa that these lots are identical, one and the same. If so, the attachment lien title of Genusa is superior to the mortgage lien of Lemm taken thereafter. Were the lots the same? It was evidently the theory of the district court that they were. Upon no other theory could his judgment be explained. We think he correctly so held.

[2] In the first place, there can be no doubt that the lot in the Genusa attachment was off the west rather than the east side of the two-acre McCasland homestead tract. This is true, as a matter of law. Upon this point plaintiff in error submits these two propositions:

"First. In deeds where there is an evident mistake in the calls, the court must, if practicable, find out from the deed itself, and correct errors so as to give effect to the deed."

"Second. Where deed is filed for record containing evident or patent mistake in its calls, the filing of same for record gives notice to subsequent purchasers of just what was embraced in the terms of the deed by fair construction.' "

These propositions are clearly sustained by our Supreme Court in the case of Carlisle v. King, 103 Tex. 625, 133 S. W. 243, from which we quote as follows:

"It was the manifest purpose of Chessher to convey to Burns 160 acres out of the southern portion of the original survey granted to him. The deed to Burns gives a description of the

patent under which he acquired the land and gives such calls, corners and distances as indicate clearly to a casual observer that the land sought to be conveyed lies within the limits of the Chessher survey and in the southern portion thereof. This purpose must be observed in the construction of the deed and it cannot be effectuated in any other manner than by correcting the palpable errors which appear in the calls as expressed in that instrument. We believe that there is no difficulty in reconciling all of these calls, thereby giving a true and correct expression of the intent and purpose of the makers of this instrument. We therefore hold that the deed upon its face is not void, but that it is sufficient in its description to convey the land as claimed by the defendants in error and to give notice to subsequent purchasers of the locality thereof.

"The filing of the deed for record from J. S. A. Chessher and wife to George Burns gave notice to subsequent purchasers of just what was embraced in the terms of the deed by fair construction. The rule of construction of deeds is 'that where there is an evident mistake in the calls the court must, if practicable, find out from the deed itself and correct errors so as to give effect to the deed.' Poitevent v. Scarbrough [Scarborough], 103 Tex. 111 [124 S. W. 87]; Mansel v. Castles, 93 Tex. 414 [55 S. W. 559]; Coffey v. Hendricks, 66 Tex. 676 [2 S. W. 47].'"

[3] The rule just quoted clearly applies to the case at bar so far as locating the lot on the west line of the two-acre tract is concerned. Upon this point, we quote as follows from the application:

"It will be seen that from a mere casual glance at the above field notes (attachment lien record) that the land by proper construction would be placed on the west side of the 2-acre tract instead of the east side, as its beginning point '50 feet south of the northwest corner; thence south, east, north, and west to beginning.' As said by the Court of Civil Appeals, 'It may be that the description discloses an apparent error, and the court should have construed the description as placing the lot on the west side.' The lot most certainly came out of the Grota homestead tract, a part of two-acre tract heretofore mentioned conveyed by F. L. Perry and Louise Perry to I. R. McCasland, a plat of the two acres agreed to by parties as same appeared at the time of the attachment. The description could not be east of this tract, and to be within the two acres the lot in question must be placed off of the west end, as was most certainly intended. It can be at no other place within the two acres and commence 50 feet south of the northwest corner. The trial court in rendering judgment construed the calls in the attachment writ and found its judgment for appellee thus placing the land off of the west side of the two acres."

As shown in the argument contained in the application and just quoted, the lot 50x100 feet could not be contained within the two-acre homestead tract, as called for by the description, unless it was made to begin on the west line of the two-acre tract rather than the east line. If other calls were rearranged, and we should begin in the east line, we would have the lot entirely without the two-acre tract. But, by causing the line to begin on the west line rather than the east line of the two-acre tract, the situation can be harmonized and all other calls in the entire description enforced.

As already shown, the Court of Civil Appeals concedes, under authority of Carlisle v. King, supra, that this lot was off the west end of the two-acre tract. This does not admit of any doubt. The lot could not commence on the east line of a tract 50 feet south of the northwest corner of the same tract. This description must be construed by the court, as a matter of law, where possible. With notice of this correct construction Lemm was charged by the law itself.

[4] Therefore the district court knew the location of the attachment lot in the two-acre tract. But he seems to have had some doubt as to whether or not the two-acre tract itself was bounded by the streets, one of which was referred to in the Lemm mortgage. Consequently, he submitted that issue to the jury. They heard all the evidence upon that point. They held the two acres was bounded by those streets. This cleared up the doubtful elements in the identification of the two-acre tract.

[5, 6] With that fact found by the jury, the court itself found that the 50x100 feet lot in the attachment lien record was the same as the lot in the mortgage. He had a right to so find. It was a question incidental to the first issue submitted and also to the legal construction of the description in the attachment lien. Furthermore, Lemm was plaintiff in the court below, and he had to establish these findings before he could be entitled to a judgment. Therefore it was his duty to ask for the submission to the jury of such issues as he wanted to be submitted in that way. If Lemm had not been willing for the court to pass upon the question of the identity of the lots, he could have asked that that issue be submitted to the jury, and should have done so. Not having done so, he agreed to leave it to the court. It will be presumed that the court found unsubmitted facts in such a way as to support his judgment. They will be sustained, if there is evidence in support thereof. See article 1985, Revised Statutes. It is not contended that there is no evidence to sustain a finding that these lots are identical.

[7] But much is said about the finding of the jury upon the second issue submitted. That issue, even if it could be said to involve a question of fact, rather than one of pure law, which we doubt, is utterly immaterial. The case, under the judgment of the court, has passed the question of whether or not Lemm was under the duty of making inquiry as to the identity of the lots. He took a mortgage on a certain lot. Another party claimed an adverse prior lien on the same lot. Regardless of any duty of inquiry arising

from the descriptions involved, that party would be entitled to it who could show on a trial that he had the better claim thereto. Under the judgment of the district court, the lot was the same, and whether or not Lemm had made inquiry was immaterial. If he had made investigation and had concluded that the lots were not the same, that would have availed him nothing, if the court or jury, upon competent evidence, decided later that they were the same.

[8] An immaterial issue can be disregarded by a trial court in rendering judgment. This is clearly held by Judge Moursund for the Court of Civil Appeals at San Antonio in the case of Fant v. Sullivan, 152 S. W. 515. In that case the Supreme Court denied a writ of error. In that case the Court of Civil Appeals affirmed the judgment of the district court, even though in contravention of the jury findings upon certain issues. It was affirmed, because, upon an issue not submitted to the jury, the same judgment should have been rendered by the district court. See, also, the case of Burd v. Ry. Co., 261 S. W. 1021, decided by this section of the Commission of Appeals. Therefore the district court rendered the correct judgment as between Genusa and Lemm, and it should have been affirmed by the Court of Civil Appeals.

We now come to the controversy over the other tract of land involved in this suit and the adverse claims of Mrs. Miller and Mrs. Kramer thereto. Upon this point the Court of Civil Appeals held:

"As between Mrs. Miller and Mrs. Kramer the court erred in instructing a verdict. Before this property was levied on under the pluries execution, Kramer had conveyed it to his wife, which raised the presumption that he intended it as a gift to her as her separate property. Mrs. Miller attacked this deed on the ground that it was a conveyance of all of his property in the estate subject to execution, and hence in fraud of his creditors, and void. The proof does not sustain this conclusion as a matter of law."

In the application Mrs. Miller makes this statement:

"The Court of Civil Appeals has held in this case that the lower court erred in instructing a verdict for appellee for the reason that before the property in controversy was levied on under the pluries execution Kramer had conveyed it to his wife, which raised the presumption that he intended it as a gift to her as her separate property. If this statement of fact agreed with the record, appellees would most certainly have no complaint. Appellees, however, beg to differ with the Court of Civil Appeals as to the facts borne out by the record, to which we will here refer, and respectfully refer the Supreme Court to same, viz.:

"On page 52, Statement of Facts:

"'Deed from D. F. Kramer to Earl York recited consideration of $250.00 and other con-

sideration; on page 52, S. F. Deed from Earl York to Eliese Kramer, reciting consideration of $250 and other considerations.

"'The first deed dated March 7, 1917, recorded March 10, 1917. The second deed (being deed to Mrs. Kramer) dated March 9, 1917, recorded March 17, 1917.'"

[9] Mrs. Miller makes this proposition of law in this connection:

"Where deed is made to a wife reciting cash consideration, no restrictions placed thereon, no recitation as to separate character, and not conveyed by husband, the presumption is that the property is community."

This proposition is correct. See Speer's Laws of Marital Rights, §§ 306, 307 and 308.

[10] The facts are as stated by Mrs. Miller and just quoted by us. Therefore the property is presumptively community and subject to this debt owing by Kramer. Under the chain of title as stated, it was not necessary for Mrs. Miller to show that the deed to Mrs. Kramer was in fraud of creditors. This seems to be the point upon which the Court of Civil Appeals decided this issue. Under the facts, the property was presumptively community, and Mrs. Kramer did nothing to remove that presumption. We think the Court of Civil Appeals erred in reversing the judgment of the trial court upon this point.

It follows, from what we have said, that we think the judgment of the Court of Civil Appeals should be reversed and that of the district court affirmed. We so recommend.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.