**BALDWIN et al. v. WILLIS et al.**

No. 4820.

Court of Civil Appeals of Texas. Beaumont.

Sept. 25, 1952.

Rehearing Denied Dec. 3, 1952.

288

Andrews, Kurth, Campbell & Bradley, Houston, for appellants.

Lane & Anderson, Center, for appellees.

R. L. MURRAY, Justice.

This is an appeal from a judgment in the district court of Shelby County, in a suit in trespass to try title to an undivided one-half of the oil, gas and other minerals in, on, and under a tract of land in the Joel Yarborough Survey in Shelby County. The case was tried before the court without a jury. The judgment was that appellants, who were plaintiffs in the trial court, take nothing by their suit. They have duly perfected their appeal from such judgment to this court for review.

The description of the land sued for contained in the pleadings of the appellants is as follows:

"  *  *  *  that certain tract of parcel of land lying and being situated in the County of Shelby, State of Texas, and being a part of the Joel Yarborough Survey, more particularly described as follows, to-wit: Beginning at Geo.

King's N.E. corner, it T. Odom's S.E. corner a stake pine 30 in. diam. S. 33 E. 9 vrs. Mkd. G.K. black gum 10 in. diam. N. 26 W. 1½ vrs. mkd. X;

"Thence W. 690 vrs. with T. Odom's S.E. line to stake, P.O. 30 in. diam. mkd. J.B.K. bears E. 85 vrs;

"Thence S. 18 E. with J.M. Jetton's E. bdry. line 550 vrs. his S.E. corner continuing same degree. 1109 vrs. a stake, it being H. Thomas' North league line pine 20 in. diam. brs. S. 2 vrs. post oak brs. N. 10 W. 13 vrs. both mkd. JBK;

"Thence E. with H. Thomas league line 672 vrs. to west bank of Brushy Bayou, a stake, red oak 20 in. diam. brs. S. 10 E. 7 vrs. black gum 8 in. diam. N. 20 W. 6 vrs. both mkd. GK;

"Thence N. 22 E. with the channel of said bayou 1220 vrs. to the place of beginning, containing 117 acres of land, more or less."

The description contained in a deed from J. S. Snider and wife to Walter May, dated January 12, 1920, is as follows:

"Tract or parcel of land. situated in Shelby County Texas. and Described as Follows. Beginning at Geo. Kings N.E. Cor. it being F. Odom.s S.E. Cor. a stake. Pine 30, in, Dia, S, 33, E, 8, inm, Mkd, OK, Black Gum, 10, Dia, N26, W, 1½ Mkd, K, Thence W, 690 vrs with T? Odom.s, S.B.Line, to stake, post oak 30. in Dia.Mkd, JBK. brs E, 85, vrs; Thence S?18, E, with J?M? Jetton, E.B. Line, 550 vrs his S?E?Cor, Continuing same degree II09 vrs a stake, it being H, Thomas,s N,League Line, pine 20, in, dia, brsS,2, vrs Post Oak Brs N,10,W,13,vrs both Mkd JBK, Thence with H,Thomas,s League Line S, 672, vrs to the W,Bank of Brushey, Creek or Bayou, a stake Red Oak,20 in,dia,brs S,

10,E,7 vrs, Black Gum 8,in, din, 2120,W,6,vrs,both Mkd,Gk;Thence N,22nEnwith the chanel of said Bayou? I220,vrs to the place of Beginning, Containing, One Hundred and seventeen Acres Of Land, More or Less, (II7 Acres) And Recordied in the County Records of the County Book No 96 and Pages 65, and 66."

The original of this instrument was by order of the court attached to the transcript and sent up with the record in this case. We have copied the description contained therein, showing the peculiar typing contained in the deed, as nearly as possible. The deed containing the above description was offered in evidence by appellants as their exhibit P-15, and was excluded by the court on objection of appellees. The objections in substance were (1) the description therein was insufficient to identify the land; (2) the description therein was insufficient to supply the necessary information to locate such land; (3) the field notes therein do not close because: (a) there is a call to proceed with the H. Thomas South league line after the preceding call had ended on the H. Thomas N. league line; (b) the aforementioned call to proceed on the H. Thomas league line has a direction call for South, which prevents the field notes from closing.

Exhibit P-15, the deed containing the above description, was offered by the appellants for the purpose of establishing a common source of title in J. S. Snider and wife. They had earlier in the trial undertaken to establish such common source of title in Walter May and wife and for that purpose had placed in evidence their exhibits Nos. 1 and 2, consisting of a deed from Walter May and wife to J. C. Baldwin and the deed therein referred to for descriptive purposes, by which the said J. C. Baldwin acquired the interest in the tract of land described in said deed. This land the appellants are claiming through subsequent deeds and instruments, and exhibits Nos. 4, 5, and 6. The appellants, in their brief, have elected to rely upon J. S. Snider and wife as the common source of title through their deeds in-

cluded in their exhibits P–1, P–2 and P–15, all three of which were excluded from the evidence by the court. Exhibits P–1 and P–2 were first received in evidence by the court and were later stricken therefrom and exhibit P–15 was excluded upon the objections of appellees as above set forth.

The appellants' three points on which they bring this appeal are as follows:

Point 1, the trial court erred in excluding from evidence the deed from J. S. Snider and wife to Walter May, offered as plaintiffs' exhibit No. 15, for the reason that this deed accurately describes the land in litigation.

Point 2, the trial court erred in striking from the evidence the deed from Walter May and wife to J. C. Baldwin, offered as plaintiffs' exhibit No. 1, and the deed referred to therein for descriptive purposes, offered as plaintiffs' exhibit No. 2, for the reason that such deeds, when read together, accurately describe the land in litigation.

Point 3, the trial court erred in failing to enter judgment in favor of appellants, James C. Baldwin and Robert B. Baldwin, decreeing that each owns an undivided ¼th interest in and to the oil, gas and other minerals in, on and under the land described in plaintiffs' first amended original petition.

Appellants' Point 1 will be discussed first: It is noted that in the deed from Walter May and wife to J. C. Baldwin, plaintiffs' exhibit No. 1, the description of the land in part reads as follows: " * * * being a part of the Hezekiah Thomas H.R. Survey, and containing 117 acres of land, more or less, which is fully described by metes and bounds in a deed recorded in Volume 96, Pages 65 and 66 of the Deed Records of Shelby County, Texas." In the descriptive deed mentioned therein, plaintiffs' exhibit No. 2, from L. P. Agnew and wife to J. S. Snider the description therein does not state in what survey the land is situated, either the Joel Yarborough or the Hezekiah Thomas. From the evidence in the case it is established that those two surveys adjoin each other and the Yarborough survey is immediately North of the Thomas survey. The ap-

pellants introduced in evidence the testimony of a licensed surveyor who testified that he located the tract of land described in plaintiffs' exhibit No. 2, in a deed from Agnew and wife to Snider. He testified that he located said tract from the calls in the Agnew to Snider deed; that he located a large post oak on what he took to be the North line of the tract being resurveyed and he took this to be the bearing tree called for as the locater of the Northwest corner of the tract being resurveyed; that the post oak located was over 30 inches in diameter and was dead, apparently having been burned; that the mark "JBK" could not be found, but the tree located was the only one of the distance called for in the metes and bounds description of the tract referred to in the Agnew to Snider deed to be found on the presumed North line of the tract being resurveyed, and said large tree was found to lie 85 varas due East from the Northwest corner of the tract being resurveyed; that from this Northwest corner he resurveyed the next call for course and distance in the metes and bounds description in the deed from the Agnews to Snider and ran it as the West boundary line of the tract being resurveyed; that by running a line South 18° East 1109 varas from said Northwest corner he made a southwest corner on what he knew to be the North line of the H. Thomas Survey; that this course and distance corresponded exactly with the call in the old metes and bounds description of the tract being resurveyed; that from this point he ran a line East along what he knew to be the North line of the Thomas league and the South line of the Joel Yarborough Survey until said line intersected with the center of Brushy Creek at a distance of approximately 681.84 varas. (The appellants point out in their brief that this distance is some 9 varas more than called for in the original metes and bounds description of the tract being resurveyed, but they say that this additional distance is accounted for by the fact that the original description called for a point on the West bank of Brushy Creek and the surveyor ran his line to the center line of that creek.) The surveyor further tes-

tified that to verify his conclusion that he had located the point where the North line of the Thomas and the South line of the Yarborough surveys intersected Brushy Creek, that being the called Southeast corner of the tract he was resurveying, he proceeded on the same course across Brushy Creek and at a distance of 356 feet (128.61 varas) from the center of Brushy Creek he found on this course an upright stone. In a deed introduced for descriptive purposes by the appellants as their exhibit No. 10 from Daniel Coyle et al. to Mrs. C. E. Coyle, there is a call for a rock for a corner at the Southeast corner of the Joel Yarborough survey on the North line of the H. Thomas survey. The witness testified that by his measurement such upright stone was 2,350 feet East of the point marked by him as the Southwest corner of the tract he was resurveying. In a deed from J. M. Whiddon to H. K. Whiddon introduced by the appellants for descriptive purposes as their exhibit No. P–11, it was established that the distance from the West bank of Brushy Creek and the Southeast corner of the Joel Yarborough was 138 varas (383 feet). His distance called for as the South line of the resurveyed tract was 1,866.6 feet, the sum of the two distances 1,866.6 feet and 383 feet calls for a total distance of 2,249.6 feet as the distance lying between the Southwest corner of the resurveyed tract and the Southeast corner of the Joel Yarborough Survey on the North line of the H. Thomas league. The witness further testified that by his measurement the upright stone which he found as the Southeast corner of the Joel Yarborough Survey was 2,250 feet East of the corner which he marked as the Southwest corner of the tract he was resurveying. He further testified that if he had proceeded South 672 varas from the Southwest corner of the tract being resurveyed, as was called for in the metes and bounds description in the Snider to May deed set out above in this opinion, if the letter "S" is to be followed literally, rather than proceeding East with the H. Thomas North line, he would have been in the Hezekiah Thomas Survey and the field notes of the description called for in that deed would not close.

From the above evidence we believe that the description in the deed from Snider and wife to May, Exhibit P–15, which is substantially the same as in the Agnew to Snider deed, is sufficient to identify and locate on the ground the tract of land therein described if the surveyor was correct in his assumption that the South line of the tract described in the deed is located on the North line of the Hezekiah Thomas Survey. The particular calls in the Snider to May deed which must be interpreted are: (1) those for the West line of the tract which read "Thence S. 18 E. with J. M. Jetton E.B. line, 550 vrs for S.E. cor., continuing same degree 1109 vrs. stake, it being H. Thomas,s, N. league line", (2) those for the South line of the tract reading "Thence with H. Thomas, s league line S. 672 vrs to the W. bank of Brushy Creek or Bayou." Appellees contend that the latter call contains the call to proceed South on the South line of the H. Thomas league whereas the previous call had located a point on the North line of the H. Thomas league. We believe it is apparent from examination of the original instrument brought up with the record the words in the second call, "Thence with the H. Thomas's league line" cannot be given this interpretation. It is clear rather that the scrivener of the deed to the best of his typing apparently was writing a call "Thence with H. Thomas's league line". Throughout the description in this instrument the writer thereof had struck various keys of his typewriter calling for the indiscriminate use of interrogation points, commas, periods and apostrophes. This is particularly noticeable from the fact that in a call preceding the one under examination, the writer of the deed had written a call, "continuing same degree 1109 vrs a stake, it being H, Thomas's N. league line." It is clear that this call undoubtedly refers to H. Thomas's North league line and that the following call should certainly be interpreted as intending to be "thence with H. Thomas's league line" and to refer to a call with the same

line of the H. Thomas's league at which the preceding call in a southerly direction had arrived, the H. Thomas North league line.

■ The appellees made the further objection to the deeds introduced in evidence that even if the third call for course and distance is a call to proceed with the North line of the H. Thomas league, the wording of that call would require proceeding South with the H. Thomas league line and would thus prevent a closing of the field notes. This is true if the letter "S" is to be given preference over other calls in the same instrument. It is evident that a surveyor attempting to locate the land by the second call could not follow strictly the letter "S" and proceed South into the Hezekiah Thomas league and at the same time proceed with the H. Thomas league line 672 varas to the bank of Brushy Creek. We believe that the call for the letter "S" is inconsistent with the other directions in this call and must be discarded as being obviously an erroneous call which is inconsistent with the other calls in the entire description. When this inconsistent letter "S" is discarded in favor of the three consistent calls, the North line of the H. Thomas league can be followed East 672 varas and Brushy Creek is there. When this is done, the field notes of the description close. We believe this is the proper construction to be given to these calls on the authority of Easterling v. Simmons, Tex.Civ.App., 293 S.W. 690 (writ refused); Coffey v. Hendricks, 66 Tex. 676, 2 S.W. 47 and cases cited therein. The objections of appellees to the deed should have been overruled.

We believe that the trial court was in error in excluding in evidence the deed from Snider and wife to May, plaintiffs' exhibit P-15.

■ Appellants' Point 2 complains of the action of the trial court in striking from the evidence the two deeds at first introduced by the appellants, the deed from May and wife to J. C. Baldwin and the deed referred to therein for descriptive purposes. The same objection was made to the admissibility of these two deeds as were made by the appellees to the introduction of the deed from Snider and wife to May, which we discussed under Point 1 above. The further objection was made that there was a variance between the land described in said deeds and the tract of land described and sued for in the petition of appellants, plaintiffs below. This objection is based upon the fact that in their pleading the appellants omitted the letter "S" in the third call for course and distance and that this letter "S" appears immediately preceding the words "672 vrs" in the third call for course and distance in the description in the second of the two deeds offered in evidence. An objection was also made that the two deeds, when read together, described the tract of land as located in the H. Thomas H. R. Survey, whereas the tract of land in litigation is described as being in the Joel Yarborough Survey. It is apparent to us that the variance between the descriptions contained in the deeds stricken from the evidence and the pleading of the appellants is of no importance. It is, of course, contended by the appellants that their description as given in their pleading is a correct description of the land and that the discarded letter "S" is an erroneous call which should be discarded by the courts upon an examination of the instrument itself, in the light of the testimony of the surveyor who resurveyed the land in litigation. We agree with the appellants in this contention and so held in our consideration of their Point No. 1. It naturally follows therefore that we do not agree with the contention of the appellees that this variance in the description between the pleading and the two deeds would make the two deeds themselves inadmissible in evidence. In regard to the objection by the appellees to the deeds that the land sued for is described as being in the Joel Yarborough Survey and the description in the deed from Walter May and wife to J. C. Baldwin the land is described therein as being a tract of land in the Hezekiah Thomas H. R. Survey, we believe that it is clear that a reading of the description in the deed from Agnew and wife to Snider shows that the land being conveyed could not lie in the Hezekiah

Thomas Survey. One of the calls in that description calls for a corner on the H. Thomas league North line, and from that point or corner there is a call to proceed East with the H. Thomas league line to the W. bank of Brushy Creek and the next call is to go North 22 E. with the channel of the bayou to the place of beginning. It is obvious that the call to proceed East with the H. Thomas league North line is the South boundary line of the tract described and conveyed. It is equally obvious that the tract being described and conveyed cannot lie in the Hezekiah Thomas H. R. Survey when the South boundary line of the tract is the same as the North boundary line of the H. Thomas H. R. Survey and when the next call requires a line proceeding in a Northerly direction away from the H. Thomas Survey. The reference in the deed from May and wife to Baldwin to the effect that the land described is in the Hezekiah Thomas H. R. Survey must be regarded as a general description. The specific metes and bounds description contained in the deed from Agnew and wife to Snider must be deemed a particular description. Where there is a conflict or repugnancy between a general and a particular description the particular description must prevail. The reason generally given for this rule is that the particular description is presumed to express the intention of the parties to the deed with more certainty than does the general description. It is said in Holman v. Houston Oil Co. of Texas, Tex.Civ.App., 152 S.W. 885, 890, "If land is conveyed by definite metes and bounds, showing its exact location on the ground, and it is further described as being in the south half of a particular league or tract, * * * the particular description must be regarded, because common sense and common experience teaches that such particular description more clearly indicates the grantor's intention." On this authority and cases cited therein we hold that this feature of the objection of the appellees to the two deeds in question should have been overruled.

■ The appellees contend that the trial court properly struck from evidence the deed from May and wife to Baldwin and also the deed from Agnew to Snider because the appellants failed to plead for reformation of the deed from May and wife to Baldwin in order to correct the reference to the Thomas Survey. They rely upon and quote from Brittain v. Dickson, Tex.Civ.App., 60 S.W.2d 1093 and Reserve Petroleum Co. v. Harp, Tex.Civ.App., 221 S.W.2d 366 and 14 Tex.Juris. 1024. We believe that the case of Wyman v. Harris, Tex.Civ.App., 222 S.W.2d 297, by this Court is authority for the proposition that a pleading for equitable relief such as reformation of a deed is not a necessary prerequisite to a judicial interpretation of a deed containing inconsistencies and conflicting calls. Justice Walker in that opinion made an extensive review of the authorities and cited many cases in support of the pronouncement contained therein. On that authority we hold that Brittain v. Dickson, supra, and Reserve Petroleum Co. v. Harp, supra, are not applicable to the controversy before us. In both of those cases the deeds involved described tracts of land in unambiguous language which contained no other identifying description by which the tracts described could be identified as the land sued for. When such deeds were offered in evidence as muniments of their title to the land in litigation the courts held that the proponents of the deeds would be required first to plead specifically for reformation of said deeds because of latent ambiguities or mutual mistake in the descriptive portions thereof before the deeds could be received in evidence. We believe that the deeds from May and wife to Baldwin and from Agnew and wife to Snider, Exhibits P–1 and P–2, contained descriptive matter identifying the land in litigation from which a determination could be made and was made of the true meaning of the deed without the necessity of a specific pleading on behalf of the proponents of the deed seeking to reform or correct the incorrect portions of the deeds.

■ The appellees also contend that the evidence adduced by the appellants from their surveyor was not sufficient to locate the land accurately and point to various in-

consistencies and variances as to distances and calls in the testimony of the surveyor. Without discussing them in detail, we have examined all of the testimony in the light of the contentions of the appellees and believe that the variances and discrepancies are satisfactorily explained in the testimony itself and that the evidence is sufficient to locate the land sued for.

We are of the opinion that the three deeds excluded and stricken from the evidence should have been received in evidence and the appellants' Points 1 and 2 are sustained.

Appellants' Point 3 is that the trial court erred in failing to enter judgment in their favor, decreeing that each owned a ¼th undivided interest in and to the oil, gas and other minerals in, on and under the land described in their petition. They contend that under the authority of Tipps v. Bodine, Tex.Civ.App., 101 S.W.2d 1076 (error refused) the conveyance to Snider and wife, and the conveyances from May and wife to J. C. Baldwin, establish in them the mineral interest as contended for by the appellants. They contend under this point that we should reverse the judgment of the trial court and render judgment for them for their mineral interest. The instruments on which they rely under this point were not in evidence before the trial court. We are without authority to render judgment for the appellants upon evidence which was not introduced in the trial court, even though we might have been warranted in so doing had the three deeds been received in evidence. It is said in The Leader, Inc., v. Elder Mfg. Co., 39 S.W.2d 880, by the Commission of Appeals, that "the Court of Civil Appeals has no power to find facts in the first instance, and under R.S.1925, article 1856, authorizing that court on reversal of a judgment to render such a judgment as the trial court should have rendered, 'except when it is necessary that some matter of fact be ascertained,' where a judgment is reversed the Court of Civil Appeals cannot render a judgment for the other party based on evidence not admitted on the trial, but must remand the case to the trial court." This authority cites Patrick v. Smith, 90 Tex.

267, 38 S.W. 17; Eidson v. Reeder, 101 Tex. 202, 105 S.W. 1113; Abbott Oil Co. v. San Antonio Brewing Ass'n, 104 Tex. 574, 141 S.W. 517; Nast v. San Antonio U. & G. Ry. Co., Tex.Com.App., 261 S.W. 1011. The Article 1856 of the statutes referred to in the decision is now incorporated into our Texas Rules of Civil Procedure, Rule 434. Under the authority of the above case and the cases cited therein the appellants' third point must be overruled and the cause must be remanded to the district court for a new trial.

Reversed and remanded.